# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

WAYNE P. CRISMORE,

                        CV 08-177-M-DWM-JCL

        Plaintiff,

  vs.                       FINDINGS AND
                            RECOMMENDATION OF
                            UNITED STATES MAGISTRATE
                            JUDGE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

      Plaintiff Wayne Crismore ("Crismore") brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

      Crismore filed his application for benefits on January 10, 2005, alleging he

PAGE 1

became disabled on August 6, 2003 due to respiratory problems, weakness in his left leg, and back pain.  Tr. 160.  Crismore's application was denied initially and on reconsideration.  Tr. 38039, 43-44, 46-48.  After an administrative hearing at which Crismore appeared with counsel, an Administrative Law Judge found Crismore was not disabled within the meaning of the Act.  Tr. 15-25; 571-621.  The Appeals Council denied Crismore's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review.  Tr. 6-8.  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Crismore was 40  years old when he filed his application for benefits in January 2005, and 42  years old at the time of the ALJ's decision.

## I.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

PAGE 2

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ

PAGE 3

will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled.  20 C.F.R. § 404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

### III.  DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Crismore met the insured status requirements of the Act through December 31, 2008, and had not engaged in substantial gainful activity since his August 6,

2003, alleged onset date. Tr. 17. The ALJ found at step two that Crismore suffered from reactive airway dysfunction syndrome, which constituted a severe impairment. Tr. 17. At step three, the ALJ determined that Crismore did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 18. The ALJ also found that while Crismore's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not entirely credible." Tr. 21-22. Having done so, the ALJ next determined that Crismore retained the residual functional capacity to perform a limited range of light work. Tr. 18. Although the ALJ found that Crismore could not return to his past relevant work, he concluded that there remained a significant number of jobs in the economy that Crismore could perform, including light level work as a file clerk, order clerk, and telephone solicitor. Tr. 24-25.

    Crismore challenges the ALJ's decision on several grounds. First, Crismore argues the ALJ erred by ignoring a pulmonary residual functional capacity questionnaire completed by his treating physician, Dr. William Bekemeyer. Second, Crismore maintains the ALJ erred at step two by finding that his orthopedic impairments were not severe. Crismore also contends the ALJ

PAGE 5

failed to adequately account for the effects of his obesity.  Finally, Crismore claims the ALJ did not cite sufficient reasons for discrediting his subjective testimony, and failed to develop the record as to his mental impairments.  As a result of these errors, Crismore claims the ALJ erroneously assessed his residual functional capacity and posed a flawed hypothetical to the vocational expert.  Because it is dispositive, the Court turns first to the question of whether the ALJ properly evaluated Dr. Bekemeyer's opinion.

     Crismore was injured on August 6, 2003, when he was exposed to fumes while working as a welder.  Tr. 266.  Dr. Bekemeyer has been Crismore's treating pulmonologist since the time of that accident, and has diagnosed Crismore with reactive airway disease.  Tr. 238-55; 466-76; 530-39.  On November 11, 2006, just days before Crismore's hearing before the ALJ,  Dr. Bekemeyer completed a residual functional capacity questionnaire in which he assessed Crismore's pulmonary restrictions.  Tr. 477-80.  Dr. Bekemeyer indicated that Crismore's symptoms included shortness of breath, chest tightness, wheezing, episodic acute asthma, fatigue, and coughing.  Tr. 477.  He characterized Crismore's attacks as severe, and wrote that they occurred "weekly to daily" and typically left Crismore incapacitated for "hours" at a time.  Tr. 477.  As a result, Dr. Bekemeyer indicated that Crismore would need to take unscheduled work breaks on a daily basis.  Tr.

PAGE 6

479.  When asked how long Crismore would have to rest before returning to work, Dr. Bekemeyer wrote: "unknown - may be hours."  Tr. 479.  Dr. Bekemeyer estimated that Crismore would be absent from work as a result of his impairment about four times a month, and wrote in a brief addendum that "environmental irritants have been precipitating factors in worsening symptoms ever since onset of illness in 2003 and I advised against any exposures in 2006."  Tr. 480.

Crismore argues the ALJ erred because he did not discuss Dr. Bekemeyer's assessment in his written decision, either for purposes of adopting the restrictions Dr. Bekemeyer identified or rejecting them.  Crismore is correct.

It is well-established that a treating physician's opinion is ordinarily entitled to great weight.  *See Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).  While "a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Batson*, 359 F.3d at 1195 (*quoting Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).  "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted."  *Batson*, 359 F.3d 1195 (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

If the ALJ chooses to disregard a treating physician's opinion, however, he

PAGE 7

must provide reasons for doing so. *See e.g. Thomas v. Barnhart*, 278 F.3d 947, 957-58 (9th Cir. 2002). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1998)). Even where "the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 81 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

    The ALJ in this case failed to even mention Dr. Bekemeyer's assessment, much less provide any reasons for rejecting it. Tr. 15-25. That the ALJ effectively rejected Dr. Bekemeyer's assessment is clear from the fact that he did not incorporate certain restrictions identified by Dr. Bekemeyer into Crismore's residual functional capacity. The ALJ described Crismore's residual functional capacity as follows:

    After careful consideration of the entire record, the undesigned finds that

PAGE 8

>  the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; walk up to 1/4 of a mile, stand 30 minutes to 1 hour at a time, and sit for up to 1 hour at a time with the ability to alternate positions as needed over the course of an 8 hour day.  He is able to frequently balance, stoop, kneel, crouch, or crawl, and limited to no more than occasional climbing of stairs or ramps.  He must avoid concentrated exposure to extreme temperatures, vibrations, and uneven surfaces; avoid even moderate exposure to fumes, odors, dust, and gasses, and work in an environment which does not require high or constant stress.  He must also work in a controlled environment with avoidance of public contact, and a small number of co-workers.

Tr. 19.

Notably absent from the ALJ's assessment of Crismore's residual functional capacity is any mention of his apparent need to take daily unscheduled breaks for up to hours at a time or the fact that he would likely be absent from work about four times a month – both of which were limitations identified by Dr. Bekemeyer in his November 2006 opinion.  While the ALJ's assessment of Crismore's residual functional capacity was consistent with some of the other limitations identified by Dr. Bekemeyer, the ALJ did not explain why he rejected Dr. Bekemeyer's opinion regarding Crismore's need for breaks and anticipated absences.   The ALJ was certainly entitled to reject Dr. Bekemeyer's opinion regarding Crismore's limitations, but he could not do so without first providing, at a minimum, specific and legitimate reasons supported by substantial evidence of record.  See *Reddick*, 81 F.3d at 725.  The ALJ did not meet that burden here.  In

PAGE 9

fact, he did not discuss Dr. Bekemeyer's November 2006, assessment at all.  Tr. 15-25.

There can be no dispute that the ALJ was aware of Dr. Bekemeyer's assessment, as evidenced by the fact that he referred to it at various points during the administrative hearing.  Tr. 583, 603-04.  Following up on the ALJ's line of questioning, Crismore's attorney noted that Dr. Bekemeyer believed Crismore would need to take unscheduled breaks on a daily basis.  Tr. 605.  And on further questioning, Crismore confirmed that he would have to take frequent breaks due to shortness of breath.  Tr. 605-06.   Despite the fact that the ALJ was thus aware of Dr. Bekemeyer's assessment,  he failed to discuss the report in his written decision.  The significance of the ALJ's omission in this regard is underscored by the testimony of the vocational expert, who indicated there were no suitable jobs for an individual requiring more than the normally scheduled work breaks and who would miss more than two workdays a month.  Tr. 615-16.

The Commissioner apparently reads the ALJ's decision differently and suggests that he did consider Dr. Bekemeyer's November 2006 opinion.  According to the Commissioner, the ALJ "expressly stated that Dr. Bekemeyer's residual functional capacity assessment was consistent with the other medical evidence of record, and [Crismore's] testimony regarding his physical capacity,

PAGE 10

with the exception of the need for extended breaks throughout the day, of which he found no evidence in the file." Def.'s Br. in Support 6 (July 30, 2009).

But the residual functional capacity assessment to which the ALJ referred in his decision was one completed by Dr. Bekemeyer some two years earlier - in May 2004. Tr. 23, 530-39.  The ALJ accepted that assessment, in which Dr. Bekemeyer indicated Crismore was limited to light exertional work with a lifting restriction of 15 pounds and should avoid fumes, vapors, dust, or dramatic changes in temperature or humidity.  Tr. 23.  The ALJ found that Dr. Bekemeyer's May 2004 "residual functional capacity evaluation closely parallel[ed] the claimant's own testimony regarding his physical capacity with the exception of the need for extended breaks throughout the day."  Tr. 23.  The ALJ then explained that he could "find no evidence in [the] file that the claimant requires such restrictions." Tr. 23.

In doing so, however, the ALJ overlooked Dr. Bekemeyer's November 2006 pulmonary residual functional capacity assessment.  That assessment corroborated Crismore's testimony as to his need for extended breaks.  As noted above, the ALJ was free to reject Dr. Bekemeyer's opinion, but was required to cite legally sufficient reasons for doing so.

In briefing before this Court, the Commissioner indeed points to several

PAGE 11

reasons the ALJ could well have provided for rejecting Dr Bekemeyer's November 2006, opinion.  For example, the Commissioner argues that Dr. Bekemeyer's November 2006 assessment is not supported by clinical and laboratory findings.  Def.'s Br. in Support 8.  While the ALJ could well have cited the lack of clinical findings as a reason for rejecting Dr. Bekemeyer's opinion, he did not do so.  Nor did the ALJ provide any other reasons for declining to adopt Dr. Bekemeyer's most recent opinion as to Crismore's various limitations.  Because the ALJ provided no explanation whatsoever for rejecting Dr. Bekemeyer's November 2006, opinion, this matter must be remanded.

That having been said, the question becomes whether to remand for an award of benefits or for further proceedings.   This question in turn implicates what has come to be known in the Ninth Circuit as the "credit as true" rule, which may apply when the ALJ fails to provide legally sufficient reasons for rejecting the opinion of a treating or examining physician.  *See e.g.*, *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir 2006); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Lester*, 81 F.3d 821, 834 (9th Cir. 1995).   Under this rule, if the ALJ does not "provide adequate reasons for rejecting the opinion of a treating or examining physician, [the court] will credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834.

PAGE 12

While the *Lester* decisions suggest that application of the credit-as-true rule is mandatory, "a split of authority has developed" in the Ninth Circuit as to whether its application is in fact "mandatory or discretionary". *Vasquez v. Astrue*, --- F.3d —, 2009 WL 1941485 * 5 (9th Cir. July 8, 2009) (denying rehearing en banc and amending and superseding *Vasquez v. Astrue*, 547 F.3d 1101 (9th Cir. 2009). Typically, the Ninth Circuit has "credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen v. Chater*, 80 F.3d 1273, 1293 (9th Cir. 1996). In *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), however, the Ninth Circuit concluded that, "[i]nstead of being a mandatory rule, [the court] has[s] some flexibility in applying the 'crediting as true' theory," and held that remand for further proceedings was appropriate where there were "insufficient findings as to whether [the claimant's] testimony should be credited as true." These and other Ninth Circuit decisions have created what the dissent in *Vasquez* described as a "morass" in this circuit's "crediting-as-true jurisprudence." *Vasquez*, 2009 WL 1941485 * 16.

PAGE 13

In this case, remand for further proceedings is appropriate. The ALJ is in a better position than this Court to evaluate the medical evidence, and giving the ALJ the opportunity to evaluate Dr. Bekemeyer's November 2006, opinion on remand will remedy what this Court has identified as a defect in the original administrative proceedings. As the Ninth Circuit explained when reaching a similar assessment in *McAllister,* "[t]here may be evidence in the record to which the [Commissioner] can point to provide the requisite specific and legitimate [or clear and convincing] reasons for disregarding the testimony of [the claimant's] treating physician. Then again, there may not be. In any event, the [Commissioner] is in a better position that this court to perform this task." *McAllister*, 888 F.2d at 603. *See also Anderson v. Barnhart*, 2004 WL 725373, *10 (N.D. Cal. 2004) (remanding for reconsideration where "the ALJ failed to adequately explain his reasons for rejecting [treating physician's] conclusions as to work restrictions and [Claimant's] testimony with respect to the extent and effect of his pain...."); *Perry v. Astrue*, 2009 WL 435123 (S.D. Cal. 2009) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for rejecting the treating physician's opinion).

## IV.  CONCLUSION

For all of the above reasons,

PAGE 14

IT IS RECOMMENDED that Crismore's motion for summary judgment be granted the Commissioner's motion for summary judgment be denied, and the Commissioner's decision be reversed. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 25th day of August, 2009.

    /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge