IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

WAYNE P. CRISMORE,

                                                                                                           CV 08-177-M-DWM-JCL

                Plaintiff,

        vs.                                                                                       ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____

On October 30, 2009, the Court entered an order reversing the Commissioner's decision denying Plaintiff Wayne Crismore's application for disability insurance benefits under Title II of the Social Security Act, and remanding the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). This matter comes before the Court now on Crismore's application for an award of attorneys fees in the amount of $9,204.83 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA). Crismore seeks to recover for 53.5 hours of work performed by attorney Andrew

Koenig at the applicable statutory rate under the EAJA. Crismore also seeks $350 in costs. A hearing was held on Crismore's application for fees on March 24, 2010 - a hearing at which Koenig testified.

Under the EAJA, a party who prevails in a civil action against the United States is entitled to an award of attorney's fees "unless the court finds that the position of the United States was substantially justified" or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). A request for attorneys fees under an EAJA petition must represent hours that were "reasonably expended" in preparation of the petition. *Blum v. Stenson*, 465 U.S. 886, 901 (1984). The typical EAJA fee request thus requires the Court to determine whether the plaintiff is the prevailing party, whether the defendant's position was substantially justified, whether the number of hours for which fees are sought is reasonable, and whether there are special circumstances that would make a fee award unjust.[1]

As the record in this case reflects, however, this is not a typical EAJA fee request. Crismore does not seek to recover any attorney fees for work performed by his sole attorney of record, Robert Ogg. Crismore is instead requesting fees for services performed exclusively by Koenig, an attorney licensed to practice in

---

[1] The Commissioner conceded at oral argument that he does not contend his position was substantially justified, and that the parties are now in agreement as to the amount of the fees requested by Crismore.

California, but not in Montana. Because Koenig is not a member of the State Bar of Montana and is not licensed to practice law here, the Commissioner argues that Crismore is not entitled to attorneys fees for Koenig's services under the EAJA.

For guidance in determining whether Crismore may recover fees for Koenig's work in this case, this Court looks to the Ninth Circuit's recent decision in *Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009). At issue in *Winterrowd* was whether the plaintiffs could recover attorney fees under a state statute for work done by a member of the Oregon Bar who assisted a member of the California Bar in litigating a case before the federal district court in California. *Winterrowd*, 556 F.3d at 817. The Oregon attorney was not a member of the California Bar, did not physically appear before the federal court in California, did not sign any of the pleadings, had minimal contact with the clients and no direct contact with opposing counsel, did not render legal services directly to the plaintiffs, was supervised by an attorney licenced to practice law in California, and was not admitted pro hac vice. *Winterrowd*, 556 F.3d at 817, 825.

The *Winterrowd* court held that the plaintiffs could recover fees under those circumstances, and in doing so began its analysis by clarifying that its inquiry into whether attorney fees were recoverable and whether the attorney had engaged in the unauthorized practice of law was controlled not by state law, but by the federal

court's local rules and federal case law. *Winterrowd,* 556 F.3d at 822. Looking to those federal sources, the court identified two ways a plaintiff may recover attorney fees for work done by a lawyer who is not a member of the bar of the state where the presiding court sits and has not been admitted to practice in the case pro hac vice. *Winterrowd*, 556 F.3d at 822.

First, the court explained that under federal court precedent such a plaintiff would be entitled to fees "if the attorney at issue would have certainly been permitted to appear pro hac vice as a matter of course had he or she applied." *Winterrowd*, 556 F.3d at 822. Because the record in *Winterrowd* showed that the attorney at issue was a member in good standing of the out-of-state bar to which he had been admitted, and there had been no suggestion of any unlawyerlike conduct on his part, the *Winterrowd* court observed that the attorney "would have most likely been admitted pro hac vice" in California federal court. *Winterrowd*, 556 F.3d at 823.

But as the court also recognized, an otherwise qualified attorney could nevertheless be disqualified from pro hac vice admission under the California federal court's local rules if the attorney resided in California, was regularly employed in California, or regularly engaged in business, professional, or other similar activities in California. *Winterrowd,*, 556 F.3d at 823. Because the record

-4-

had not been developed as to those facts, the *Winterrowd* court could not conclude that the attorney would have certainly been permitted to appear pro hac vice as a matter of course had he applied, and "declined to rest [it's] reasoning" on the assumption that he would have been so admitted.

Here, Crismore concedes that because Koenig resides in Montana, he would not in fact have been eligible for pro hac vice admission under the Local Rules of Procedure for the United States District Court for the District of Montana. Dkt. 23, at 3 & 9. Pursuant to Local Rule 83.3(e)(2), an attorney is not eligible to appear pro hac vice before this Court if "the attorney resides in Montana." Presumably because Koenig would not have been eligible for pro hac vice admission, Crismore does not argue that he is entitled to fees under the first avenue of recovery identified by the court in *Winterrowd*. Absent any such argument on Crismore's part, the Court need not determine whether the fact that Koenig's place of residence would have rendered him ineligible for pro hac vice admission likewise means he was "otherwise unqualified" for admission within the meaning of the *Winterrowd* decision. *Winterrowd*, 556 F.3d at 825 (indicating that an attorney who has been disbarred, suspended, or is "otherwise unqualified" for pro hac vice admission to the bar of the relevant court may not be the beneficiary of its holding).

Crismore instead argues he is entitled to attorney fees for Koenig's work under the second avenue for recovery identified in *Winterrowd*. Under this second standard, a plaintiff may recover fees if the attorney's "conduct did not rise to the level of 'appearing' before the district court." *Winterrowd,* 556 F.3d at 823. In such cases, the attorney's role is properly considered as one of providing "litigation support" and is thus "distinguishable from an 'appearance'." *Winterrowd*, 556 F.3d at 823. The court in *Winterrowd* was presented with just such a situation, and held accordingly that the plaintiffs could recover attorney's fees because the attorney at issue, who was not a member of the forum state's bar and had not been admitted pro hac vice, "did not render legal services directly to the plaintiffs." *Winterrowd*, 556 F.3d at 825. The court specifically rested this holding on the fact that the attorney "did not physically appear before the [federal court], did not sign pleadings in the case before the [federal court], and had minimal, nonexclusive contacts with the Winterrowd plaintiffs. *Winterrowd*, 556 F.3d at 825. The court also explained that the attorney "who was licensed to practice law in [the forum state] was the person who alone remained responsible to the plaintiffs...." *Winterrowd*, 556 F.3d at 825.

Crismore argues the relationship between Ogg, who is admitted to practice in Montana, and Koenig, who is not, was essentially the same as the attorney

-6-

relationship at issue in *Winterrowd*.  As Crismore characterizes the arrangement between these two attorneys, Ogg "retained the services" of Koenig to assist with this federal court action.[2]  Dkt. 23, 1.  Crismore maintains that Koenig remained under Ogg's supervision at all times, and that Ogg was responsible for reviewing, editing, and signing all court filings. Dkt. 23, 3.  Because Koenig remained under Ogg's "supervision and control at all times," Crismore effectively argues that Koenig's role was limited to that of providing litigation support of the sort for which *Winterrowd* held attorney fees may be recovered.  Dkt. 23, at 3.

While the circumstances in this case are similar in some respects to *Winterrowd*, the situation is not exactly as Crismore describes it.  Contrary to Crismore's claim that Ogg simply retained Koenig to assist him with the briefing, the record reflects that Ogg and Koenig both contracted directly with Crismore to provide legal services in this federal court action.  Dkt. 28.  At the Court's direction Crismore has filed a document titled "Attorneys' Fee Agreement With Client: Wayne P. Crismore," which was signed by Ogg, Koenig, and Crismore,

---

[2]Koenig testified that normally his services are retained in the District of Montana by an attorney who represented the social security claimant at the administrative level.  Koenig has, however, provided his services to some three claimants on appeal to this Court that he had represented at the administrative level.  In these three cases, an attorney retained by the claimant for appeal would subsequently enlist the services of Koenig.

and clarifies the nature of the legal arrangement between them. Dkt. 28. The first page of that agreement bears a heading identifying Ogg and Koenig as attorneys, and setting forth their office contact information. The stated "purposes of representation" as set forth in the first paragraph of the agreement reads as follows:

> Client <u>Wayne P. Crismore</u> ("Client") employs Attorneys Robert K. Ogg an[d] Andrew T. Koenig ("Attorneys") to represent him in a federal district court action seeking to reverse the denial of social security disability/SSI benefits by the Commissioner of Social Security.
>
> Dkt. 23

Thus, unlike *Winterrowd*, where it was evident that the attorney at issue "did not render legal services directly to the plaintiff," Koenig did in fact contract to provide legal services directly to the plaintiff in this federal court action. *Winterrowd*, 556 F.3d at 825. The fact that Koenig did not sign any of the court filings, which were reviewed and edited by Ogg, does not somehow negate the terms of the contract stating that Koenig agreed to represent Crismore in this federal court action. Because Koenig contracted directly with Crismore to represent him on appeal to this tribunal, the facts in this case are materially different from those present in *Winterrowd*.

This case is also distinguishable from *Winterrowd* simply by virtue of the

-8-

fact that it is an appeal from an adverse social security disability determination. Social security appeals are unique creatures, decided as they are by the Court based solely on the briefing submitted in conjunction with cross-motions for summary judgment. This means that, absent an unusual situation like the one presented by the pending motion, the attorneys involved do not physically appear in court. By way of contrast, the attorneys in the breach of contract action underlying the *Winterrowd* decision would presumably have had multiple opportunities to physically appear in court. Thus, in that case, it was significant that the attorney at issue had not physically appeared before the court.

Given the unique nature of a social security appeal, however, the fact that Koenig did not physically appear before the Court is of far less significance. Koenig performed virtually all of the legal work involved in this case. He reviewed the administrative record, listened to the audio recording of the hearing, drafted the complaint, and drafted Crismore's summary judgment motion and statement of undisputed facts. Dkt. 21-1, at 12. Koenig later reviewed the Commissioner's response and cross-motion for summary judgment, drafted the reply brief, and drafted the response when the Commissioner objected to the undersigned's findings and recommendation. Dkt. 21-1, at 12. This left Ogg with little to do but review and edit the briefs to which he ultimately affixed his

signature.

Certainly, there is nothing wrong with one attorney contracting with another for litigation support services. In this case, however, Koenig did more than simply provide litigation support. He contracted directly with Crismore to represent him in this federal court action, and in effect did so by performing virtually all of the legal tasks involved. Because this case is materially different from *Winterrowd*, it falls outside the scope of that court's holding and Keonig is not entitled to recover attorney fees. The Court does not doubt the good intentions of both Ogg and Koenig. Nonetheless, Koenig is required to comply with the mandate of L.R. 83. Accordingly,

IT IS ORDERED that Plaintiff's motion for attorney fees is DENIED.

IT IS FURTHER ORDERED that Plaintiff's unopposed request for costs pursuant to 28 U.S.C. § 1920, in the amount of $350, is GRANTED.

DONE and DATED this 29th day of March, 2010.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge